16



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

COREY NASH,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

Civil No. 04-CV-10105-BC
Criminal No. 01-CR-20032-BC

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON MOTION UNDER 28 U.S.C. § 2255
## TO VACATE, SET ASIDE OR CORRECT SENTENCE

## I.   RECOMMENDATION

**IT IS RECOMMENDED** that Petitioner's motion under 28 U.S.C. § 2255 be

**DENIED**.

## II.   REPORT

### A.   Introduction

Pending, pursuant to an Order of Reference from United States District Judge David

Lawson (Dkt. 41), is the above-entitled motion filed under 28 U.S.C. § 2255 to vacate

Petitioner's federal custodial sentence. The motion was filed on April 21, 2004. (Dkt. 40.)

Respondent was directed to file an answer (Dkt 42), which he did on June 23, 2004. (Dkt.

45.) Petitioner filed a reply on July 27, 2004. (Dkt. 47.) I therefore conclude that pursuant

to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

## B.    Procedural History

On October 10, 2001, the grand jury returned a two-count Indictment charging Petitioner with possession with intent to distribute crack cocaine and knowing and unlawful distribution of five or more grams of crack cocaine. (Dkt. 3.) The Federal Defender's Office was appointed to represent Petitioner, and David Koelzer of that office was assigned the case. (Dkt. 5.) On October 24, 2001, a First Superseding Indictment was passed by the grand jury. This indictment made no substantive change in the charges made against Petitioner.

On January 18, 2002, a consent to enter guilty plea before United States Magistrate Judge and an Order of Reference was filed. (Dkt. 14.) This consent was evidenced the signature of Petitioner, his counsel, and the Assistant United States Attorney assigned to the case. A Rule 11 Plea Agreement was filed the same day. In the agreement, Petitioner stated his willingness to plead guilty to the charge made in Count II of the First Superseding Indictment and stipulated that at the time charged in that count, he knowingly distributed 5 or more grams of crack cocaine. (Plea Agreement, Dkt. 16 at 1-2.) Petitioner stipulated in the plea agreement that he was responsible for drug transactions in amounts exceeding 20 grams, but less than 35 grams. (*Id.*) Petitioner also stipulated that this resulted in a offense level under the United States Sentencing Guidelines ("U.S.S.G.") of 28. In this agreement, Petitioner stipulated to the waiver of his rights of appeal as follows: "[Petitioner] agrees not

2

to appeal or otherwise challenge, in any proceeding, the accuracy of any factor stipulated to in this agreement." (*Id*. at 5-6.)

In the worksheets accompanying the plea agreement, the base offense level of 28 was calculated pursuant to U.S.S.G. 2D1.1(c)(6). (*Id*., Worksheet A.) The worksheets reflect that Petitioner's prior criminal history included convictions for the use of marijuana, resisting arrest, and the use of cocaine. (*Id*., Worksheet C.) The worksheets further reflect that the offense to which Petitioner was pleading took place shortly after or during imprisonment. These factors led to the calculation of 12 total criminal history points and a criminal history category of V. (*Id*.) A three-level downward adjustment for acceptance of responsibility was agreed upon by the parties, and these factors yielded a sentencing guideline range of between 100 and 125 months. Finally, the worksheets reflect that Petitioner would be sentenced to a mandatory minimum of 60 months' imprisonment. (*Id*., Worksheet D.)

On the same day as the filing of the consent and Rule 11 Plea Agreement, Petitioner tendered a guilty plea before this United States Magistrate Judge. I thereafter recommended that Petitioner's plea of guilty tendered to the charges set forth in Count II of the First Superseding Indictment be accepted and that the Rule 11 Plea Agreement tendered by the parties be taken under advisement. (Dkt. 17.) No objections were filed, and the recommendation was accepted by Judge Lawson on February 2, 2002. (Dkt. 19.)

Thereafter, a Presentence Investigation Report (PSR) was filed to which the Petitioner filed an objection. On October 22, 2002, Judge Lawson elected to sentence Petitioner to the middle of the guideline range calculated in the Rule 11 Plea Agreement, and

3

a Judgment and Commitment Order was entered three days later reflecting a custodial sentence of 110 months, along with the recommendation that Petitioner be designated to a correctional institution having a comprehensive drug treatment program. (Dkt. 26.)

In spite of the waivers made in the Rule 11 Plea Agreement, Petitioner filed a notice of appeal on November 1, 2002. (Dkt. 27.) Petitioner's counsel thereafter filed a motion to withdraw, along with a "no merit" brief pursuant to Rule 101(f), Rules of the Sixth Circuit and *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). The motion was granted, and Petitioner's conviction affirmed in an unpublished decision issued October 23, 2003. (Dkt. 37.) The instant motion followed on April 21, 2004.

In his motion and the accompanying typewritten memorandum, Petitioner argues that his counsel provided him ineffective assistance in the following ways: (1) that counsel led the Petitioner to believe that a direct appeal was being prepared when, in fact, an *Anders* brief and motion to withdraw were filed instead; (2) that counsel failed to file a motion to suppress Count II of the First Superseding Indictment; (3) that Petitioner was deliberately misled by his counsel as to the consequences of the plea and subsequent sentencing; and (4) that Petitioner never knowingly waived his right of appeal.

## C.    Analysis and Conclusions

### 1.    Governing Law of § 2255

In order to prevail on a § 2255 motion, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A § 2255 motion

4

is not a substitute for a direct appeal. When a petitioner raises a claim under § 2255 that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation. *See Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994). However, the Sixth Circuit has held that a post-conviction motion under § 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)). Here, all of Petitioner's claims are of ineffective assistance of counsel.

In addition, where, as in this case, Petitioner's motion to vacate arises out of a plea, the United States Supreme Court has held that a guilty plea cuts off the right to challenge potential ineffective assistance occurring prior to the plea. In *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973), the Supreme Court held:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

(*Id.*) at 267.

## 2.   Governing Law of Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d

5

674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Id*. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id*. Rather, the movant must show that but for counsel's errors, the result would have been favorably different. *Id*. at 693. Although *Strickland* was decided twenty years ago, the Supreme Court has more recently reaffirmed that "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the criminal process. In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the

6

mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

In assessing whether counsel's performance is deficient, courts must "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Both prongs of the *Strickland* standard must be met in order to prevail on a claim of ineffective assistance of counsel; therefore, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Courts must bear in mind that strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation. *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).

In *Strickland,* the Supreme Court stated:

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."

*Strickland*, 466 U.S. at 690-91.

The two-part test from *Strickland* also applies in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). To satisfy the prejudice prong of the standard, the petitioner "must show that there is a reasonable probability that,

7

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

### 3.    Ineffective Assistance of Counsel Claims

### a.    Refusal to File Motion to Suppress

Petitioner appears to argue in his motion, and the rather disjointed memorandum which accompanies it, that attorney Koelzer provided ineffective assistance through his failure to file a motion to suppress. Petitioner also appears to argue that attorney Koelzer should have filed a motion seeking to suppress statements Petitioner made at the time of his arrest. (Mot., Dkt. 40 at 15-16.)

In an affidavit attached to the Government's response, attorney Koelzer stated that "[w]ith respect to Count 1 of the First Superseding Indictment (which was ultimately dismissed . . .), I did not file a motion to suppress . . . [because] [i]t was my professional judgment that this evidence was seized as a result of a traffic stop that was valid under the Fourth Amendment." (Gov't's Resp., Koelzer Aff. at ¶ 4.) Mr. Koelzer also stated that even if the two grams of crack cocaine involved were suppressed, it would have no affect on Defendant's ultimate sentencing. (*Id.*) In this process, attorney Koelzer stated: "I discussed the above information in depth on a number of occasions with Mr. Nash, in particular on January 18, 2002, with Federal Defender Office Investigator Cameron Henke present." (*Id.* at ¶ 7.) Furthermore, attorney Koelzer and investigator Henke conducted a "lengthy telephone interview" with the informant who testified before the grand jury. Mr. Koelzer

8

stated in his affidavit that the informant "confirmed his previous grand jury testimony and made other statements that were extremely damaging[.]" (*Id.* at ¶ 8.)

I first suggest that this claim of allegedly ineffective assistance is barred under *Tollett*, as Petitioner's guilty plea constitutes a waiver of his right to claim constitutional violations arising out of the actions of attorney Koelzer prior to his plea. I further suggest that even if this claim is not barred, Mr. Koelzer's performance as outlined above, is well above the minimum standards set forth by the Supreme Court in *Strickland*, and constitutes the type of strategic decision made after thorough consideration which, under *Strickland,* this Court should not disturb.

### b.   Intentional Misrepresentations

Petitioner claims that his  plea was not knowing and voluntary, and that in the process of securing the plea, attorney Koelzer provided ineffective assistance through intentional misrepresentations, failures to investigate, and by ignoring facts and claims presented by Petitioner. As mentioned earlier, Petitioner and Mr. Koelzer both consented to the entry of Petitioner's guilty plea before this Magistrate Judge. Early in that proceeding, I intentionally engaged Petitioner in the following colloquy:

> THE COURT: Okay. Now, you have the right to a lawyer to represent you at every stage of these proceedings, and as we have here, the Court can appoint a lawyer to represent you if you – if you can't afford a lawyer; do you understand this?

> THE DEFENDANT: Yes.

> THE COURT: Okay. Mr. Koelzer has – has been working with you. I – I presume you and he have discussed this agreement and the charges and – and the effects of this agreement; right?

THE DEFENDANT: Yes.

THE COURT: Okay. Are you satisfied with Mr. Koelzer's advice and the – and the services he's been doing for you?

THE DEFENDANT: Yes.

THE COURT: Good. Now, your lawyer and the Government's attorney have submitted to me a Rule 11 plea agreement, and that – that agreement is – tells me that you wish to – first of all, wish to plead guilty to the charge or to some charges, rather, and it also bears your signature. And it – it looks as though it was signed today; is that right?

THE DEFENDANT: Yes.

THE COURT: Okay. And I gather your willingness to plead guilty is as a result of the prior discussions between your lawyer and the Government's lawyer, which have resulted in this – in this Rule 11 plea agreement; is that right?

THE DEFENDANT: Yes.

(Plea Tr., Dkt. 18 at 7-8.)

Immediately after the Assistant United States Attorney summarized the terms of the

Rule 11 agreement, I asked Petitioner and his counsel:

All right. Mr. Koelzer, do you agree with the terms of the agreement as stated by the U. S. Attorney?

MR. KOELZER: Yes, I think that's a fair summary.

THE COURT: All right. Mr. Nash, do you understand the terms of this plea agreement?

THE DEFENDANT: Yes.

THE COURT: Do you agree with the terms of the agreement as they're stated by the Government's lawyer?

THE DEFENDANT: Yes.

10

THE COURT: Okay. You've had a chance to discuss this agreement with your – with your own lawyer, Mr. Nash, to your satisfaction; is that right?

THE DEFENDANT: Yes.

(*Id*. at 10.)

After asking if Petitioner had been promised leniency or a specific sentence in return

for his plea, I asked:

Okay. Are you therefore pleading guilty freely, voluntarily, because in fact you think you are guilty and it's your choice to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Okay. Now, do you understand that you have the right to plead not guilty to the – to all the charges filed against you?

THE DEFENDANT: Yes.

THE COURT: Okay. Do you understand that if you plead not guilty, you'll have the protection of a number of constitutional rights. I'm going to explain those in a minute, but the effect of this Rule 11 plea agreement, the effect of this guilty plea is that you will be waiving, that is giving up these constitutional rights by pleading guilty; do you understand this?

THE DEFENDANT: Yes.

(*Id*. at 11-12.)

After explaining each of the constitutional rights Petitioner had relating to his trial,

I asked:

Okay. Now, do you understand that if you plea guilty and if your plea is accepted by the Court, you will be found guilty of this charge without a trial and you'll be giving up all these rights we've just talked about; do you understand this?

THE DEFENDANT: Yes.

11

(*Id.* at 13-14.)

I next confirmed Petitioner's understanding of the maximum sentence he could serve,

as well as the concept of a mandatory minimum sentence. (*Id.* at 14-16.) I also explained

to Petitioner, in a general sense, the workings and procedure outlined in the sentencing

guideline process. (*Id.* at 16-17.) I then questioned Petitioner as follows:

> Now, with these elements in mind, with your rights in mind, with the
> rights that you say that you want to waive, that is give up in mind, and with the
> fact that you've consented to my asking you this, how do you plead to the
> charge of distribution of cocaine? That is the second count of this superseding
> indictment. How do you plead, sir?
>
> THE DEFENDANT: Guilty.

(*Id.* at 18.)

After discussion relating to the factual basis underlying Petitioner's plea, I asked him

again:

> All right. Now, I've heard your recitation – you've heard the recitation
> that we've talked about, about your rights. And we talked about the penalty
> that could be imposed. Is it still your intention to plead guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Do you want me to recommend to Judge Lawson
> that he accept this plea, go forward, go ahead and decide on the sentence?
>
> THE DEFENDANT. Yes.

(*Id.* at 20.)

On appeal, the United States Court of Appeals for the Sixth Circuit stated:

> A comparison of the plea transcript with Criminal Rule 22, as outlined above,
> reflects the efforts of the magistrate judge to ensure literal compliance with the
> dictates of Rule 11 and to provide Nash with a meaningful dialogue in this

12

context. Nash's valid guilty plea means that he may not now raise any pre-plea issues for appellate review. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

*United States v. Nash*, No. 02-2527, 2003 WL 22435656 (6th Cir. October 23, 2003) (unpublished).

I therefore suggest that Petitioner's claim that his plea was involuntary is without merit. Petitioner's unsubstantiated assertions to the contrary fail to carry the day. I further suggest that, as outlined above, attorney Koelzer's efforts were well above the minimum standards of representation set forth in *Strickland*. In addition, as noted by the Sixth Circuit, Mr. Koelzer's efforts, among other things, yielded a sentence shorter than that contemplated by the parties in the plea agreement. I therefore suggest that on this claim, Petitioner's motion be denied.

### c. Waiver of Right to Appeal

Petitioner claims that he never waived his right to appeal. Paragraph six of the Rule 11 agreement, signed by Petitioner and his counsel, states:

> Defendant agrees not to appeal or otherwise challenge in any proceeding the constitutionality or legality of any part of the Sentencing Guidelines. **Defendant agrees not to appeal or otherwise challenge, in any proceeding, the accuracy of any factor stipulated to in this agreement.**

(Rule 11 Plea Agreement, Dkt. 16 at 5-6 (emphasis in original).)

During the plea proceeding, the Assistant United States Attorney specifically stated that the agreement provided that Petitioner would "not . . . appeal or otherwise challenge . . . the legality of the sentencing guidelines or any fact that's been stipulated to as part of this agreement." (Plea Tr., Dkt. 18 at 10.) As mentioned, when asked if he agreed to the terms

13

as summarized by the Assistant United States Attorney, the Petitioner answered in the affirmative. (*Id.*) After stating his plea, I asked Petitioner again:

> THE COURT: Okay. Now, do you understand the consequences of this plea that we've talked about? The loss of the rights, the waiver of the rights, all these other things, you understand these matters?

> THE DEFENDANT: Yes.

(*Id.* at 15.) The Sixth Circuit nevertheless entertained Petitioner's claim of appeal, and, after consideration, affirmed Petitioner's plea and sentence.

The facts set forth above convince me that Petitioner's uncorroborated claims that he never waived his appellate rights cannot serve as a basis for the granting of the relief requested in Petitioner's motion. Nor, for the reasons outlined above, can they form any basis for the finding that attorney Koelzer failed to effectively represent Petitioner within the meaning of *Strickland.* As a result, I suggest that on this claim Petitioner's motion be denied.

### d.    Denial of Right to Direct Appeal

Petitioner asserts that attorney Koelzer provided ineffective assistance of counsel because he filed an *Anders* brief with the Sixth Circuit. Pursuant to *Anders,* counsel is required to brief "anything in the record that might arguably support the appeal." *Anders v. California,* 386 U.S. 738, 744, 87 S. Ct. 1396, 1400, 18 L. Ed. 2d 493 (1967). The briefing must be done from perspective "where counsel acts in the role of an active advocate in behalf of [her] client as opposed to that of amicus curiae." *Id.* Although the filing of an *Anders* brief that fails to point out meritorious issues can, at least in theory, constitute ineffective assistance, *Steward v. Gilmore,* 80 F.3d 1205, 1213 (7th Cir. 1996), as discussed above, the

14

issues raised in the instant motion have been found by more than one court to lack merit. I therefore suggest that counsel's filing of an *Anders* brief does not constitute ineffective assistance of counsel within the meaning of *Strickland*. *See Jones v. United States*, 264 F. Supp. 2d 714, 720 (N.D. Ill. 2003). Accordingly, I suggest that as to this claim, Petitioner's motion be denied.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

CHARLES E. BINDER
United States Magistrate Judge

DATED:   August 24, 2004

Copies to:   Corey Nash, No. 28834-039, FCI Milan, P. O. Box 1000, Milan, MI 48160
Michael J. Hluchaniuk, Assistant U.S. Attorney, Bay City, Michigan
Honorable David M. Lawson, United States District Judge